ROYAL SMITH vs. INHABITANTS OF COLERAIN.

The provision in the Rev. Sts. c. 46, § 18, that "every town shall be held to pay any expense which shall be necessarily incurred, for the relief of a pauper, by any person who is not liable by law for his support, after notice and request made to the overseers of the said town, and until provision shall be made by them," applies only to expense incurred in the support of a pauper found or residing in the town.

A. agreed with the town of C. to support two of its paupers, for one year, for a certain sum, and removed them into an adjoining town, where they were supported, during the year, at his charge, in the family of their son in law: At the end of the year, the town agreed with B. to support its paupers, for a year, for a certain sum: The said two paupers afterwards remained in the adjoining town, in the family of their son in law, who was requested by A. to support them, at his charge, until they should be removed to the town of C.: A. also gave notice to the overseers of the town of C. that said paupers were on his hands, and requested the overseers to provide for them: No provision was made for said paupers by the overseers, and they were supported by their son in law, at A.'s charge. Held, that the town of C. was not bound to pay to A. the expense incurred by him, after the first year, for the relief of these paupers.

ASSUMPSIT on the Rev. Sts. *c.* 46, § 18, to recov r the expense necessarily incurred by the plaintiff for the relief of Eliab Washburn and his wife, paupers, for eighteen months, viz. from April 8th 1841 till the commencement of this action, after notice and request made to the overseers of the poor of the town of Colerain to provide for them.

At the trial in the court of common pleas, before *Cushing,* J. it appeared that said Washburn and wife received assistance, as paupers, from the defendants in 1838, and were ever after poor and in need of assistance ; that in 1839, their support for that year was set up at auction, by a vote of the town, and bid off by Daniel Donelson ; that in April 1840, their support was set up at auction, by a vote of the town, and bid off by the plaintiff at three dollars a week ; and that the town then voted that the plaintiff " should have them to support that year."

It further appeared that the plaintiff, in April 1840, contracted with John Eddy of Guilford in Vermont, son in law of said Washburn, to support said Washburn and wife, for one year, and that said Eddy supported them accordingly, at his house in said Guilford, a town adjoining Colerain, and that the plaintiff was paid by the defendants for said support, at the rate of three dollars a week ; that the plaintiff, in April 1841, told said Eddy to keep said Washburn and wife till they should be called for, and he would pay the charges ; that said Eddy did support them at said Guilford until the commencement of this action, at the plaintiff's charge, and that they had never been in Colerain since April 1840.

It further appeared that, at the April town meeting in 1841, it was voted " that the support of the paupers over twelve years of age be set up singly ; that Washburn and wife be left to the overseers to provide for : " That the town then voted to set up all the paupers together, except the children, " the contractor to be at no expense for paupers out of town, until removed into town, except Washburn and wife : " That the support of the paupers was then bid off by Walter Bell, jr. at $500 ; and that the town then voted " that Walter Bell, jr. have the paupers, collectively, to support for the year ensuing."

It further appeared that the plaintiff, early in April 1841, gave notice to the overseers of the poor of the town of Colerain that Washburn and wife were on his hands, and at expense, and that he wished the overseers to provide for them ; that the overseers thereupon told the plaintiff that they had nothing to do about the matter ; that the town had acted for itself, and disposed of the paupers, in open town meeting, to Walter Bell, jr. ; and they referred the plaintiff to said Bell.

The judge instructed the jury (among many other things not here drawn into question) " that if they should be satisfied that these paupers had been supported by the town of Colerain sometime previously to the 8th of April 1841, they being, at the same time, at Guilford, in the State of Vermont, with the knowledge and consent of the overseers of the poor of the town of Colerain, these paupers might be considered as constructively, if not actually, in the town of Colerain ; and that it was the duty of the overseers of the poor of Colerain, on being notified by the plaintiff of the condition of these paupers, and being requested by him to furnish relief, then to afford such relief."

A verdict was found for the plaintiff, and the defendants alleged exceptions.

*Davis,* for the defendants.

*Grennell,* for the plaintiff.

SHAW, C. J.   This action is brought by an individual against the inhabitants of Colerain, to recover money alleged to have been expended by him, in support of two poor persons, whom the defendants were bound to support.   The action, if it can be maintained at all, must be maintained, either on the ground of contract, or of statute liability.   The evidence, as it seems to us, is so far from establishing any contract, that it proves the contrary.   There was no express undertaking to pay the plaintiff ; and whether a contract could be implied, depends upon the statute liability.   Although many questions arise upon the pauper laws, the principles upon which they are founded are few and simple ; and it is important, in a system of such deep interest to the community, and of such

practical importance, that they should be so. It has been too often decided to be now questioned, that the liability of towns to support poor persons is founded upon and limited by statute, and is not to be enlarged or modified by any sup posed moral obligation. By this we understand, not that there is no moral obligation on all men in society to contribute to the support of the poor; but that towns are corporations, for limited and well defined purposes, and that the duty of supporting the poor is not more binding upon them than upon parishes, counties, the State, or other organized bodies, further than such duty is created by law.

1. Towns are by law liable for the relief and support of poor persons, lawfully settled therein, whenever they shall stand in need thereof. Rev. Sts. *c.* 46, § 1. 2. They shall provide for the immediate comfort and relief of all persons, residing or found therein, not belonging thereto, but having a lawful settlement in other towns. § 13. 3. They shall relieve all poor persons, residing or found therein, having no lawful settlements within the State. § 16. 4. Towns are also held to pay any expense which shall be necessarily incurred for the relief of a pauper, by any person not liable by law for his support, after notice and request made to the overseers, and until provision shall be made by them. § 18.

The first great object of the law, founded on the principle of simple humanity, is, that the party standing in need shall have relief immediately, and at the place where it is required; that is, from the overseers of the town where he is residing, or is found, without regard to their ultimate liability. The person in distress shall not be compelled to wait till notice can be given to a distant town, and whilst, perhaps, a controversy is subsisting as to its liability. And to ensure such relief, if the overseers neglect or refuse, on notice, to afford it, any person not himself liable for such relief, may afford it, at the expense of the town.

The second great object of the law is, to provide how this charge shall be ultimately borne. In certain cases, it is charge able to certain lineal kindred, which we need not stop to con

sider here; but supposing there are none such, how does the law establish it? In the first of the above cases, the charge is to be ultimately borne, where it first falls, by the town of the pauper's settlement. In the second case, the town furnishing the relief and support are in effect the almoners of the town of the pauper's settlement, who, on notice, are required to reimburse the sums thus paid, and, on refusal, may be compelled to do so by action. In the third case, they are in like manner the almoners of the State, who undertake, in a mode provided by law, to reimburse them. The fourth case above stated, founded on Rev. Sts. *c.* 46, § 18, is that where the overseers of the town in which the pauper is found or resides, whether it be the place of his legal settlement or not, neglect or refuse, on notice and request, to afford relief. The party in whose charge, or under whose care, the poor person is, shall not be compelled to turn him forth without relief, nor to bear, himself, a burden which the town ought and is by law required to bear. In this respect, it makes no difference whether the pauper has his settlement in such town or not. The duty of affording immediate relief to the pauper, and of relieving the person who on considerations of humanity is affording it, is equally imperative in both cases. The only difference is, that in the one case, the town has no remedy over, but simply takes a burden which it is ultimately to bear; in the other case, they have a remedy over against another town, or against the State. Such, we think, is the construction of this statute. The words of the statute, it is true, are general, viz. " every town shall be held to pay any expense which shall be *necessarily incurred,* for the relief of a pauper, by any person who is not liable by law for his support, after notice and request made to the overseers of the said town, and until provision shall be made by them." But the term "every town" must necessarily have some limitation; and we think it quite clear that it is limited to the town in consequence of whose default the person entitled to the remedy is subjected to a duty and burden from which the officers of such town ought to have relieved him by making provision; that is, the

town where the relief is required, and where it is to be afforded: the town where the poor person is found or is residing.

From this view of the law, it appears to us that, in a suit by an individual against a town for reimbursement of the expense of relieving and supporting a poor person, it must appear that such town was liable for such relief, and that, on due notice and request, made to the overseers, they refused or neg · lected to afford it. The court, therefore, cannot concur with the learned judge who presided at the trial, in all the opinions expressed by him, as they appear in the bill of exceptions. Without remarking upon all these propositions in detail, we think that it was incumbent upon the plaintiff, in order to maintain his action, to prove that Washburn and wife were residing or found in Colerain; because, in no other event was the town liable, for their support, to the person temporarily furnishing such support. Smith was paid for keeping the paupers, for 1840, the sum to which he was entitled by contract. At the expiration of that time, they were in the family of their son in law, at Guilford, in Vermont. If the laws of Vermont are like ours, in this respect, the town of Guilford would have been liable, after notice and request, either because they had a settlement there, or as a town in which they were residing or found when standing in need of relief. But the town of Colerain were no longer liable; not by contract, for that was performed; not by statute, for the case contemplated by the statute did not exist. If it be suggested that the town might be liable on their contract, for not sending for and taking back the paupers at the end of the stipulated time, it is a sufficient answer that no such contract is declared on or proved.

And we are inclined to the opinion, that it would have made no difference, had the plaintiff proved that the paupers had their settlement in Colerain. If every individual, in any part of the State or out of it, after notice given to a distant town, could afford support to a poor person, and bring an action directly against such town for the amount, and recover, upon proving the settlement, it would greatly increase litigation,

42 *

and enlarge the expenses of the pauper system. A town might be put to the labor and expense of trying the question of settlement over and over again; and a judgment in their favor on the question of settlement, in a suit by one person. would afford them no bar to a suit by another. But when a town affords relief, either directly by its overseers, or indirectly by paying those persons who have afforded relief, they have a remedy over against the town of the paupers' settlement, limited and regulated by statute. A notice given, if not answered within a limited time, is binding on the question of settlement. So a judgment in one action is conclusive of the question of settlement between the same parties. So the regulations, in regard to the removal of paupers, contemplate the same proceedings as between towns. Rev. Sts. *c.* 46, §§ 19 – 21. Nor is such remedy necessary for the person temporarily affording relief, on principles of humanity; because he has a complete remedy against the town, the neglect of whose overseers has subjected him to such expense. *Mitchell* v. *Cornville,* 12 Mass. 333. *New Salem* v. *Wendell,* 2 Pick. 341. *Worden* v. *Leyden,* 10 Pick. 24.

We do not mean to be understood as saying that in no case can a town be bound to support a state pauper, or one having a settlement in another town, though out of its limits at the time. The law allows two or more towns to unite in erecting an almshouse for their common use. It cannot be within the limits of more than one, yet we have no doubt that any pauper in such house, though out of the limits of the town placing him there, must be considered as under the charge of that town. So when a town enters into a contract to support one, whom it is bound to support, in another town, and stipulates to bring such person back, at the expiration of the agreed time, such town might be bound to do so, if the pauper himself, who has a will upon the subject, would consent; and, on their neglect or refusal to do so, might be subject to damages. But it would not found a case for an action on the statute.

The court of common pleas having taken a different view of the law, at the trial, we think the verdict must be set aside and a new trial granted.